UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
JULIE DERMANSKY,                                      :
                                                     :
                            *Plaintiff*,             :          Index No.: 1:24-cv-1272
                                                     :
                                                     :
            -against-                                :          **COMPLAINT**
                                                     :
                                                     :          <u>**DEMAND FOR JURY TRIAL**</u>
THE HEARST CORPORATION, HEARST              :
MAGAZINE MEDIA, INC., HEARST                 :
COMMUNICATIONS, INC., MICROSOFT              :
CORPORATION, YAHOO! INC., and JOHN DOES 1-  :
99                                                   :
                                                     :
                            *Defendants*.            :
------------------------------------------------------------------------x

Plaintiff Julie Dermansky ("Plaintiff" or "Dermansky"), by and through her attorneys,

brings this action against Defendants The Hearst Corporation, Hearst Magazine Media, Inc.,

Hearst Communications, Inc. (collectively, "Hearst"), Microsoft Corporation ("Microsoft"),

Yahoo! Inc. ("Yahoo!"), and John Does 1-99 ("John Doe Defendants") (collectively,

"Defendants"), and alleges as follows:

<u>**NATURE OF THE ACTION**</u>

1.      This is an action for direct and contributory copyright infringement, as well as for

the violation of Plaintiff's rights under Section 1202 of the U.S. Copyright Act resulting from the

unauthorized removal and/or alteration and falsification of Copyright Management Information

("CMI"), as that term is defined under 17 U.S.C. § 1202.  Plaintiff, a professional commercial

photographer, brings this action in response to the unauthorized use of her original copyrighted

photograph by Defendants, via their websites and elsewhere.

## PARTIES

2.     Since 2008, and at all relevant times, Plaintiff has provided professional commercial photography and photojournalism services, specializing in political figures, social injustice, and environmental matters, often on subjects of breaking or important news. Dermansky's residence and principal place of business is in the New Orleans, Louisiana metropolitan area.

3.     Defendant The Hearst Corporation is a Delaware corporation, which is registered to do business in the State of New York, and which maintains its principal place of business in The Hearst Tower, 300 West 57th Street, New York, New York.   Defendant The Hearst Corporation owns and controls, directly or indirectly, the other Hearst Defendants.

4.     Defendant Hearst Magazine Media, Inc. is a corporation organized under the laws of the State of Delaware, which has its headquarters and principal place of business located at 300 West 57th Street, New York, NY 10019, and owns and operates the publications *Country Living* and *Redbook* at issue in this litigation, among others (collectively the "Hearst Publications").

5.     Defendant Hearst Communications, Inc. is a corporation organized under the laws of the State of Delaware, which has its headquarters and principal place of business located at 300 West 57th Street, New York, NY 10019, and is or was at relevant times the entity with the Hearst corporate structure responsible for licensing and distributing content from Hearst's various publications, including but not limited to *Country Living* and *Redbook* to third parties such as Yahoo! and Microsoft for further reproduction, distribution, display and publication.

6.     Defendant Microsoft Corporation is a corporation organized under the laws of the State of Delaware, which has its principal place of business in Redmond, Washington, and owns and operates an online news source at msn.com.

7.     Defendant Yahoo! is a corporation organized under the laws of the State of Delaware, which has its headquarters and principal place of business located at 770 Broadway, New York, NY 10003, and owns and operates an online news source at news.yahoo.com.

## JURISDICTION AND VENUE

8.     This action arises under U.S. Copyright Act, 17 U.S.C. § 101, *et seq*.

9.     This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10.     This court has personal jurisdiction over each of the Hearst defendants because, *inter alia*, they are registered to do business and maintain their principal place of business, in New York, New York.

11.     This court has personal jurisdiction over Microsoft because, *inter alia*, it (a) transacts a significant amount of business within the State of New York and/or contracts anywhere within the State of New York; and/or (b) committed a tortious act within the State of New York; and/or (c) committed a tortious act within the State of New York, which caused injury to Plaintiff within the State of New York, and further, (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the State of New York, and/or (ii) purposefully availed itself of the benefits and protections offered by the State of New York by reaching out and conducting business there, and expects or should reasonably expect such business or to have consequences in the State of New York and derives substantial revenue from interstate or international commerce; and/or (d) owns, uses, or possess real property situated within the State of New York.  This court also has personal jurisdiction over Microsoft because its relationship and contracts with Hearst, a New

York based entity, give rise to the claims against it that are at issue in this case as set forth in this Complaint.

12.     This court has personal jurisdiction over Yahoo! because, *inter alia*, it is registered to do business and maintains its principal place of business, in New York, New York, and because its relationship and contracts with Hearst, a New York based entity, give rise to the claims against it that are at issue in this case as set forth in this Complaint.

13.     Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400.

**BACKGROUND FACTS**

14.     Plaintiff is a professional commercial photographer, who provides, among other services, journalistic photography services to clients.  Plaintiff charges and invoices these clients for the cost of her services, and further licenses her photographs for use by such clients according to limitations specified under her written and oral licensing agreements.  Plaintiff also licenses her photographs for uses in print and on the Internet.

15.     Plaintiff's photographs are highly valuable due to the combination of the artistic and expressive quality of her photographs, the unique or rare subject matter depicted therein, and her exclusive treatment of her photographs, which she rightfully protects.

16.     Like many professional commercial photographers, Plaintiff's livelihood depends on revenue generated by licensing her original works for reproduction and public display.

A.     **Plaintiff's Work at Issue**

17.     At issue in this lawsuit is Plaintiff's photograph, identified herein as the "Bon Secour Oil Spill Heron Photograph," which was used by Defendants without authorization and compensation.  Attached hereto as **Exhibit A** is a copy of the Wildlife Photograph from the deposit copy on file with the U.S. Copyright Office.

18.     In June 2010, Dermansky created the Bon Secour Oil Spill Heron Photograph, which depicts a silhouetted heron tragically looking for food on an oil-covered gulf-coast beach at the Bon Secour National Wildlife Refuge in Alabama during the British Petroleum Deepwater Horizon oil spill (which began in April 2010 and which, as of the date of the Photograph, was still continuing to spew oil into the Gulf of Mexico off of the Alabama coast).  At the time, it was a massive news story, and Dermansky was one of the only, if not the only, photojournalist covering the story who was able to secure access to that beach within a day or so of the oil reaching it.

19.     Plaintiff is the sole owner of the copyright in the Bon Secour Oil Spill Heron Photograph and registered it with the U.S Copyright Office under Registration No. VA 2-255-769. Attached hereto as **Exhibit B** is a copy of the registration certificate for the Photograph.

20.     Plaintiff has reserved all rights in the Bon Secour Oil Spill Heron Photograph and has not licensed any third party to use it or authorized its license by any third party other than as set forth below.

**B.     Defendants' Unlawful Uses of the Bon Secour Oil Spill Heron Photograph**

    *i.     Hearst's Unlawful Uses*

21.     On February 21, 2021, Dermansky discovered that the Bon Secour Oil Spill Heron Photograph was being reproduced, distributed, displayed and otherwise used by Hearst without her knowledge or permission in two advertorials (the "Infringing 2020 Hearst Advertorials"): (i) an October 12, 2020 advertorial on the website of the Hearst Magazine-owned *Country Living*, www.countryliving.com (the "Country Living Website") (the "Infringing Country Living Advertorial") (an example of which is attached hereto as **Exhibit C**); and (ii) a November 2, 2020 advertorial on the website of  the Hearst Media-owned *Redbook*, www.redbookmag.com (the

"Redbook Website"), a (the "Infringing Redbook Advertorial") (an example of which is attached hereto as **Exhibit D**).

22.      By way of example only, very recently, in addition to the Infringing 2020 Hearst Advertorials, Dermansky was able to locate an additional infringing advertorial using her Bon Secour Oil Spill Heron Photograph in an additional advertorial published by Hearst on April 22, 2019 on the Country Living Website, in connection with an advertorial entitled "The 50 Best Hikes in the US: Our Definitive Guide" (the "Infringing April 2019 Country Living Advertorial," and together with the Infringing 2020 Hearst Advertorials, the "Infringing Hearst Advertorials," an example of which is attached hereto as **Exhibit E**).

23.      The Infringing Hearst Advertorials are also extremely misleading as Hearst is using a newsworthy photograph meant for news and editorial uses about a devastating oil spill and its impact on the environment, instead to illustrate an advertorial about nice places to take a hike in the United States – a far cry from the original newsworthy context of the Bon Secour Oil Spill Heron Photograph.

24.      Indeed, in the original available licensing source of the Bon Secour Oil Spill Heron Photograph, from where Hearst obtained the Photograph (discussed more fully below), the caption of the Bon Secour Oil Spill Heron Photograph that Hearst would have seen had a thumbnail of the image and the caption: "ED Editorial:  USA -- Deepwater Horizon Disaster – Oil Lands on Bon Secour. . ."  Accordingly, misusing the Photograph for a guide to pleasant hikes associates Dermansky's name with something she believes damages her credibility as a serious photojournalist who documents environmental disasters, not lovely hiking activities.

25.     Without Plaintiff's knowledge or permission, Hearst reproduced, distributed and publicly displayed the Bon Secour Oil Spill Heron Photograph in the Infringing Hearst Advertorials and elsewhere.

26.     Hearst's uses of the Bon Secour Oil Spill Heron Photograph have deprived Dermansky from receiving licensing revenue and have caused significant monetary harm to Dermansky, threatening her livelihood.

27.     Hearst received revenue from various sources, including advertising revenue, revenue from Yahoo! and MSN, and revenue from other sponsors of the links in the Infringing Advertorials (as described more fully below).

28.     In August 2022, Dermansky provided notice to Hearst of its infringing uses of the Bon Secour Oil Spill Heron Photograph in the Infringing Hearst Advertorials, but Hearst continues to use the Photograph in the Infringing Hearst Advertorials as of the date of this Complaint, February 20, 2024.

29.     As of February 20, 2024, the Infringing Hearst Advertorials remain publicly available and accessible via the Country Living Website (*see*, *e.g.*, **Exhibit F**, dated February 20, 2024) and the Redbook Website (*see*, *e.g.*, **Exhibit G**, dated February 20, 2024), and the Bon Secour Oil Spill Heron Photograph continues to be distributed via and displayed on the Country Living Website and the Redbook Website.

### ii.      *Microsoft's Unlawful Use*

30.     In April 2021, Dermansky discovered that the Bon Secour Oil Spill Heron Photograph was also being reproduced, distributed, displayed and otherwise used by Microsoft without her knowledge or permission (the "Infringing Microsoft Advertorial"), in an October 12,

2020 re-publication of the Infringing Country Living Advertorial on Microsoft's website, www.msn.com (the "MSN Website") (an example of which is attached hereto as **Exhibit H**).

31.     Dermansky did not license Microsoft or any subsidiary thereof or website owned, operated or controlled by Microsoft to use the Bon Secour Oil Spill Heron Photograph.

32.     Microsoft did not ask Plaintiff for permission to use the Bon Secour Oil Spill Heron Photograph.

33.     At the time of Microsoft's publication, distribution, public display of the Bon Secour Oil Spill Heron Photograph on the MSN Website, and possibly elsewhere, Plaintiff had not granted Microsoft any license or permission to reproduce, publicly display, or otherwise use the Photograph for any purpose.

34.     Upon information and belief, Hearst distributed a copy of the Bon Secour Oil Spill Heron Photograph to Microsoft pursuant to a content license agreement between Hearst and Microsoft, which resulted in the Infringing Microsoft Advertorial.

35.     Microsoft's use of the Bon Secour Oil Spill Heron Photograph has deprived Plaintiff from receiving licensing revenue and has caused significant monetary harm to Plaintiff, threatening her livelihood.

36.     Microsoft received revenue from various sources, including advertising revenue and revenue from other sponsors of the links in the Infringing Microsoft Advertorial.

37.     In April 2022, Dermansky provided notice to Microsoft of its infringing uses of the Bon Secour Oil Spill Heron Photograph in the Infringing Microsoft Advertorial, and Microsoft removed the photograph from its website at some unknown date thereafter.

###### iii.        *Yahoo!'s Unlawful Use*

38.       In April 2021, Dermansky discovered that the Bon Secour Oil Spill Heron Photograph was being reproduced, distributed, displayed and otherwise used by Yahoo! without her knowledge or permission (the "Infringing Yahoo! Advertorial"), in a November 2, 2020 re-publication of the Infringing Redbook Advertorial on Yahoo!'s website, news.yahoo.com (the "Yahoo! Website") (an example of which is attached hereto as **Exhibit I**).  (Collectively, the Infringing Hearst Advertorials, the Infringing Microsoft Advertorial, and the Infringing Yahoo! Advertorial are referred to as the "Infringing Advertorials.").

39.       Dermansky did not license Yahoo! or any subsidiary thereof or website owned, operated or controlled by Yahoo! to use the Bon Secour Oil Spill Heron Photograph.

40.       Yahoo! did not ask Plaintiff for permission to use the Bon Secour Oil Spill Heron Photograph.

41.       At the time of Yahoo!'s publication, distribution, public display of the Bon Secour Oil Spill Heron Photograph on the Yahoo! Website, and possibly elsewhere, Plaintiff had not granted Yahoo! any license or permission to reproduce, publicly display, or otherwise use the Photograph for any purpose.

42.       Upon information and belief, Hearst distributed a copy of the Bon Secour Oil Spill Heron Photograph to Yahoo! pursuant to a content license agreement between Hearst and Yahoo!, which resulted in the Infringing Yahoo! Advertorial.

43.       Although each of the Infringing Hearst Advertorials (and the Infringing Microsoft Advertorial) all include Dermansky's authorship and ownership credits on or directly under the infringing advertorials using the Bon Secour Oil Spill Heron Photograph, the Infringing Yahoo!

Advertorial does not include any photo credit to Dermansky, and it does not display or convey any of Plaintiff's CMI.

44.     The only "credits" appearing in the Infringing Yahoo! Advertorial on or near the Bon Secour Oil Spill Heron Photograph are to Yahoo! itself, Getty, and to *Redbook*.  Accordingly, either Hearst or Yahoo! intentionally stripped Dermansky's credits from the Bon Secour Oil Spill Heron Photograph with knowledge they were doing so when it was used in the Infringing Yahoo! Advertorial, and they also provided false credits to others.

45.     Yahoo!'s use of the Bon Secour Oil Spill Heron Photograph has deprived Plaintiff from receiving licensing revenue and has caused significant monetary harm to Plaintiff, threatening her livelihood.

46.     Yahoo! received revenue from various sources, including advertising revenue and revenue from other sponsors of the links in the Infringing Yahoo! Advertorial.

47.     In April 2023, Dermansky provided notice to Yahoo! of its infringing uses of the Bon Secour Oil Spill Heron Photograph in the Infringing Yahoo! Advertorial, but Yahoo! continues to use the Photograph in the Infringing Yahoo! Advertorial as of the date of this Complaint, February 20, 2024.

48.     As of February 20, 2024, the Infringing Yahoo! Advertorial remains publicly available and accessible via the Yahoo! Website (*see*, *e.g.*, **Exhibit J**, dated February 20, 2024), and the Bon Secour Oil Spill Heron Photograph continues to be distributed via and displayed on the Yahoo! Website.

### iv.     *The John Doe Defendants*

49.     The John Doe Defendants are other publications, people, or entities that one or more of the Hearst Defendants provided with Dermansky's Bon Secour Oil Spill Heron Photograph, and

on information and belief, published the Photograph without authorization, including but not limited to the Defendants' readers who "pinned" or posted the Bon Secour Oil Spill Heron Photograph on Pinterest and/or other social media sites. Plaintiff does not yet know the scope of the Defendants' provision of the Photograph at issue to other parties, or the terms and contents of any agreements between the Defendants and any of the John Doe Defendants.

C.    **Hearst Falsely Asserts Its Use Was Licensed**

50.    Based on her correspondence with Hearst and non-party Getty Images (US), Inc. ("Getty"), Dermansky understands that Hearst contends its uses were licensed to it by Getty.

51.    However, that contention is false, as discussed below.

*i.    Dermansky's Relationship With Getty*

52.    In 2010, Dermansky entered into a written agreement with Corbis Images ("Corbis"), a photography licensing agency, pursuant to which Dermansky granted Corbis the right to review, select, digitize and license on a non-exclusive basis certain of Dermansky's photographs on a limited basis to Corbis's customers.

53.    In 2010, Dermansky submitted the Bon Secour Oil Spill Heron Photograph to Corbis and Corbis published the Photograph on its licensing platform, making the Bon Secour Oil Spill Heron Photograph available for license via Corbis's platform.

54.    In 2016, Dermansky was notified by Corbis that Getty, another photography licensing agency, became the successor to Corbis's licensing business in the United States. Getty sought to convert Dermansky's works into "exclusive" Getty content, but Dermansky refused, and her images (including the Bon Secour Oil Spill Heron Photograph) at all times remained either non-exclusive or co-exclusive to Getty for licensing on its platform, subject to important limitations as described below.

11

55.   In 2017, Dermansky and Getty entered into a new agreement that folded her existing photographs on Getty's platforms (including the content that was originally licensed via Corbis such as the Bon Secour Oil Spill Heron Photograph) under her prior agreements with Corbis and Getty into a new agreement.  However, as set forth in her correspondence with Getty and her "rate card," she maintained the works as non-exclusive or co-exclusive, and her works, including the Bon Secour Oil Spill Heron Photograph were designated as "Rights Managed" on Getty's platform, meaning that they could only be licensed by Getty to its customers for one-time uses on a time limited basis.

56.   Specifically, Dermansky understood when entering into her agreement with Getty that her works would only be licensed only for "Rights Managed" uses, meaning that any licenses granted by Getty would be limited to the specific use, medium, period of time, print run, placement, size of content, and territory selected, and for use in editorial work only, meaning that her works could not be used for any commercial, promotional, advertorial, endorsement, advertising or merchandising purposes (unless an additional agreement with her was entered into).

57.   Dermansky also understood that because the "Rights Managed" uses that she permitted were limited as described herein, by restricting her works in that way, Getty's licenses could not further sub-license (or "syndicate") her works to others.

58.   The limitation prohibiting the use in so-called "advertorials" where content is used to sell products or services is important to authors of photographs because such licenses command much larger license fees than those typically received for an editorial only use licensed through an agency such as Getty.  That is because advertorials are designed to look and read like objective journalistic content but are, in fact, paid advertisements with the primary objective being to market various companies' products or services, even though

12

the content may also contain useful information.   Moreover, advertorials allow brands to engage their target market and audience without tipping them off to the fact that they are consuming paid copy, making them more likely to engage with marketing copy if it appears in the form of an ordinary article or video.  Advertorials are also likely to attract more readers than ordinary ads because they avoid the use of ad-blocking software.

59.     Indeed, in the original listing of the Bon Secour Oil Spill Heron Photograph on the Corbis/Getty platform, the caption of the Bon Secour Oil Spill Heron Photograph that a prospective licensee such as Hearst would have seen had a thumbnail of the image and the caption: "ED Editorial:  USA -- Deepwater Horizon Disaster – Oil Lands on Bon Secour. . ."  Accordingly, it could not be mistaken as being available for advertorial use.

60.     The 2017 Dermansky-Getty Agreement had a limited duration of an initial period of one year with automatic renewals of successive one-year periods.  Dermansky had the right to terminate the Agreement without cause at any time on 90 days written notice.

61.     On August 26, 2019, the relationship between Dermansky and Getty was terminated by Dermansky.

### ii.     *Hearst's License Of The Bon Secour Oil Spill Heron Photograph and Its Violations Of The Limited Scope of that License*

62.     As discussed above, the Bon Secour Oil Spill Heron Photograph resided on Corbis's platform, available for "Rights Managed" editorial licenses since 2010, and was migrated to Getty's platform at some point after Getty absorbed Corbis's platform in 2016.

63.     In a November 2018 royalty report received by Dermansky, Getty disclosed a license of the Bon Secour Oil Spill Heron Photograph to an unregistered and apparently unincorporated division within one of the Hearst Defendants referred to as "Hearst Magazines International," purportedly dated November 1, 2018, indicating the license was for a "Premium

Access Time Limited" license, but not indicating what Hearst's editorial use related to. In other words, consistent with Dermansky's understanding of what rights she granted to Corbis and Getty, Hearst could use the Bon Secour Oil Spill Heron Photograph for a one-time editorial use, limited to the specific (if unspecified) use, medium, period of time, print run, and placement of the originally licensed specific use.

64.    Hearst and Getty apparently entered into several agreements (the "Hearst-Getty Agreements") which allowed Hearst to license different types of images from Getty's platform, including "Rights Managed" images such as the Bon Secour Oil Spill Heron Photograph, available only for limited types of uses. The Hearst-Getty Agreements also apparently permit Hearst to use other types of images, labelled as "Royalty-Free" or "Wholly Owned" images (those actually owned by Getty), for which the licensed used by Hearst were significantly broader than those that are "Rights Managed."

65.    Dermansky has asked both Hearst and Getty on numerous occasions for a copy of any of the Hearst-Getty Agreements that pertain to the Bon Secour Oil Spill Heron Photograph, but both Hearst and Getty have refused to provide Dermansky with copies.

66.    Instead, Getty provided excerpts of language from several of the Hearst-Getty Agreements, including the one that was purportedly in effect on November 1, 2018, which do not support Hearst's position that the infringing uses at issue here were licensed uses.

67.    Specifically, Getty provided language from the Hearst-Getty Agreements demonstrating that Hearst was limited to using Dermansky's Bon Secour Oil Spill Heron Photograph for editorial uses only, and that Hearst was strictly prohibited from using the licensed work in any advertorials.

68.     Getty also claimed Hearst informed Getty that Hearst used the Bon Secour Oil Spill Heron Photograph in an article dated November 1, 2018, the same date as shown in the license on the royalty statement.

69.     As stated on the aforementioned November 2018 royalty statement, the November 2018 license was listed in what was provided to Dermansky as "Time Limited."

70.     On information and belief, the purported Hearst-Getty Agreement that was in effect on November 1, 2018 expired on January 10, 2019.

71.     Neither Getty nor Hearst have provided Dermansky with a copy of the purported November 1, 2018 article using her Wildlife Photograph, and Dermansky has not been able to locate it on the Internet Archive (a/k/a the "Wayback Machine"), or any other source.

72.     On information and belief, the purported licensed use dated November 1, 2018 was also more likely than not beyond the scope of what was permitted in the Hearst-Getty Agreements as it is more likely than not that it was just an earlier version or similar advertorial to those published by Hearst in 2019 and 2020 that were not permitted uses in accordance with the language provided by Getty from its relevant agreement with Hearst.

73.     Accordingly, it appears that all of Hearst's uses of Dermansky's Bon Secour Oil Spill Heron Photograph were beyond the scope of the permitted uses that Dermansky allowed Getty to license, and the scope of what Getty did license, as Hearst's uses were: (a) used in a series of advertorials rather than in an editorial manner; (b) used beyond the time period allowed by the November 1, 2018 "time limited" license which expired in January 2019; and (c) as discussed below, further used by Hearst and others in numerous additional advertorials and its syndication of those advertorials to others, all without Dermansky's permission.

74.     Moreover, because Dermansky's agreement with Getty was terminated in 2019, Getty had no right to re-license the Bon Secour Oil Spill Heron Photograph to Hearst for use in 2020 or beyond.  While Getty was permitted a one-time right to renew unexpired licenses upon termination, none of the Getty statements sent to Dermansky indicate that Hearst renewed that license, and the Hearst-Getty Agreement in effect on November 1, 2018 had long expired by the time of termination in 2019, and thus was not eligible for renewal upon Dermansky's termination of her agreement with Getty.

75.     To the extent that discovery reveals that Getty expressly or otherwise agreed to allow Hearst to use the Bon Secour Oil Spill Heron Photograph, whether in the yet-to-be-provided Hearst-Getty Agreement that was in effect on November 1, 2018, or otherwise, any such permission went beyond the scope of what Dermansky agreed to allow Getty to permit. Specifically, Getty had no authorization from Dermansky to permit any of the infringing advertorial uses described herein as they do not meet the definition of "Rights Managed" under Dermansky's agreement with Getty.  Nor was Getty permitted to allow Hearst to further sub-license or syndicate Dermansky's works to others, or to permit Hearst to publicly display the photograph indefinitely, whether in a so-called "archive" or not.

76.     When Getty distributed the Bon Secour Oil Spill Heron Photograph to Hearst, it conveyed the image with Dermansky's authorship and ownership credits, which constitutes CMI under 17 U.S.C. § 1202, and required Hearst to provide credit to Dermansky on any licensed use.

**D.     Defendants' Monetization of Their Infringing Advertorials**

77.     Defendants monetized Plaintiff's Bon Secour Oil Spill Heron Photograph without her authorization or permission.

78.     For example, with respect to the Infringing Advertorials at issue, by clicking on any of the links in the Infringing Advertorials where the description inserted by Defendants under the Bon Secour Oil Spill Heron Photograph uses the phrase "coastal wildlife refuge," or the buttons inserted underneath the Bon Secour Oil Spill Heron Photograph by Hearst, Yahoo! or Microsoft variously labelled as "Plan your Hike" or "Shop Now" in the Infringing Advertorials, Hearst, Yahoo! and/or Microsoft take the reader to a site called "TripAdvisor," specifically, to a page relating to Bon Secour National Wildlife Refuge, at which tours and hotels and other travel accommodations can be booked and related products can be purchased.  On information and belief, each of the Defendants earns revenue for taking their readers to this TripAdvisor webpage (or other webpages available at other links in the Infringing Advertorials), at a minimum, when a reader directed to that site from the Defendants' Infringing Advertorials makes a purchase.  An example of the TripAdvisor landing page where the links or buttons each take the reader is attached hereto as **Exhibit K**.

79.     In addition, each of the Infringing Advertorials includes large numbers of advertisements, in banner ads, side ads right next to the infringing photograph, and ads below the infringing photograph.  (*See*, *e.g.*, **Exhibits C-J**).  In other instances, Hearst also allows its readers to "pin" or post specific photographs to Pinterest, encouraging its readers to further reproduce and display Ms. Dermansky's Bon Secour Oil Spill Heron Photograph without permission or authorization (*see* **Exhibits C, D & E**), and all of the Defendants permit and encourage their readers to further post photographs from the Infringing Advertorials to their social media accounts.

**E.**     **Plaintiff's Initial Discovery Of The Infringements**

80.     Plaintiff first discovered and learned of each of Defendants' infringements and CMI violations set forth in this Complaint within three years of the filing of this action.

### FIRST CLAIM FOR RELIEF
**Direct Copyright Infringement**
**17 U.S.C. §101, *et seq*.**

81.     Plaintiff incorporates by reference and realleges the allegations contained in paragraphs 1 through 80, inclusive, as though fully set forth herein.

82.     The Bon Secour Oil Spill Heron Photograph is an original copyrightable work.

83.     Plaintiff is the sole author and owner of the Bon Secour Oil Spill Heron Photograph.

84.     Dermansky has complied in all respects with 17 U.S.C. §101, *et seq*., and secured the exclusive rights in and ownership of the Bon Secour Oil Spill Heron Photograph, and has filed her copyright registration with the U.S. Copyright Office in accordance with its rules and regulations.

85.     By publishing and displaying a copy of the Bon Secour Oil Spill Heron Photograph on the Country Living Website, in connection with, at least the Infringing Country Living Advertorials in both 2019 and 2020, and on the Redbook Website, in connection with, at least the Infringing Redbook Advertorial in 2020, Hearst has infringed Plaintiff's copyright in the Bon Secour Oil Spill Heron Photograph by reproducing, distributing, publicly displaying and otherwise using the Bon Secour Oil Spill Heron Photograph, without Plaintiff's permission or authorization.

86.     By publishing and displaying a copy of the Bon Secour Oil Spill Heron Photograph on the MSN Website, in connection with, at least the Infringing Microsoft Advertorial, Microsoft has infringed Plaintiff's copyright in the Bon Secour Oil Spill Heron Photograph by reproducing, distributing, publicly displaying and otherwise using the Bon Secour Oil Spill Heron Photograph, without Plaintiff's permission or authorization.

87.     By publishing and displaying a copy of the Bon Secour Oil Spill Heron Photograph on the Yahoo! Website, in connection with, at least the Infringing Yahoo! Advertorial, Yahoo! has infringed Plaintiff's copyright in the Bon Secour Oil Spill Heron Photograph by reproducing,

distributing, publicly displaying and otherwise using the Bon Secour Oil Spill Heron Photograph, without Plaintiff's permission or authorization.

88.     As a direct and proximate result of the copyright infringement detailed herein, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

89.     As a direct and proximate result of the copyright infringement detailed herein, Defendants have gained and/or will gain substantial profits as a result of its infringement in an amount presently unknown and to be determined at trial.

90.     Plaintiff is entitled to recover her actual damages and any additional profits of the Defendants not calculated in the computation of her actual damages in an amount to be determined at trial pursuant to 17 U.S.C. § 504(b).

91.     In addition, to the extent discovery reveals any additional uses of the Bon Secour Oil Spill Heron Photograph by any of the Defendants in an infringement aside from the Infringing Advertorials made after the effective date of Dermansky's copyright registration, Plaintiff may be entitled to elect statutory damages and to recover her costs and attorneys' fees pursuant to 17 U.S.C. § 505.

92.     In addition, Plaintiff is entitled to permanent injunctive relief enjoining and restraining Defendants from infringing her copyright pursuant to 17 U.S.C. § 502.

**<u>SECOND CLAIM FOR RELIEF</u>**
**Contributory or Vicarious Copyright Infringement, 17 U.S.C. § 101, *et seq.***

93.     Plaintiff incorporates by reference and realleges the allegations contained in paragraphs 1 through 92, inclusive, as though fully set forth herein.

94.     The Bon Secour Oil Spill Heron Photograph is an original copyrightable work.

95.     Plaintiff is the sole author and owner of the Bon Secour Oil Spill Heron Photograph.

96.     Dermansky has complied in all respects with 17 U.S.C. §101, *et seq*., and secured the exclusive rights in and ownership of the Bon Secour Oil Spill Heron Photograph, and has filed her copyright registration with the U.S. Copyright Office in accordance with its rules and regulations.

97.     By the actions alleged above, one or more of the Defendants have enabled, induced or contributed to the infringement of Dermansky's copyright in the Bon Secour Oil Spill Heron Photograph by third parties' reproduction, public display, and distribution of the same.

98.     The Hearst Defendants directly distributed copies of the Bon Secour Oil Spill Heron Photograph to Yahoo! pursuant to one or more content license agreements between one or more of the Hearst entities and Yahoo!, which resulted in the Infringing Yahoo! Advertorial.

99.     The Hearst Defendants directly distributed copies of the Bon Secour Oil Spill Heron Photograph to Microsoft pursuant to one or more content license agreements between one or more of the Hearst entities and Microsoft, which resulted in the Infringing Microsoft Advertorial.

100.     The Hearst Defendants allowed their users to "pin" or post the Bon Secour Oil Spill Heron Photograph on Pinterest and thus further encouraged and induced its readers to infringe the Photograph.

101.     The Hearst Defendants may have distributed copies of the Bon Secour Oil Spill Heron Photograph to other as-yet-to-be discovered third parties pursuant to one or more content license agreements between one or more of the Hearst entities and such third parties, which may have resulted in further infringing uses.

102.     The Hearst Defendant which provided copies of the Bon Secour Oil Spill Heron Photograph to Yahoo!, Microsoft or any other third party (John Doe Defendant) had knowledge

that Yahoo!, Microsoft or any other third party (John Doe Defendant) intended to make additional uses of the Bon Secour Oil Spill Heron Photograph, and induced, caused, and/or materially contributed to Yahoo!'s, Microsoft's, or any other third party's (John Doe Defendant)'s infringing uses.  By providing access to, and copies of, the Bon Secour Oil Spill Heron Photograph, the Hearst Defendants provided Yahoo!, Microsoft, or any other third party (John Doe Defendant) with the tools and support for their direct infringement of Dermansky's copyrighted work.

103.    As such, one or more of the Hearst Defendants are contributorily liable for the direct copyright infringement committed by Yahoo!, Microsoft, or any other third party (John Doe Defendant).

104.    In addition, on information and belief, both Microsoft and Yahoo! permitted their readers to share the Bon Secour Oil Spill Heron Photograph on various social media platforms, likely resulting in additional infringements of the Bon Secour Oil Spill Heron Photograph, and Microsoft and Yahoo! had knowledge that other third parties (John Doe Defendant) intended to make additional uses of the Bon Secour Oil Spill Heron Photograph, and induced, caused, and/or materially contributed to those other third party's (John Doe Defendant)'s infringing uses.  By providing access to, and copies of, the Bon Secour Oil Spill Heron Photograph, the Yahoo!, and Microsoft Defendants provided other third parties (John Doe Defendants) with the tools and support for their direct infringement of Dermansky's copyrighted work.

105.    As such, one or more of the Microsoft and Yahoo! Defendants are contributorily liable for the direct copyright infringement committed by any other third party (John Doe Defendant) who shared the Bon Secour Oil Spill Heron Photograph to other locations where it was reproduced or displayed publicly.

106.    As a direct and proximate result of the copyright infringement detailed herein, Dermansky has been and continues to be damaged in an amount unknown at present and to be determined at trial.

107.    As a direct and proximate result of the copyright infringement detailed herein, the Defendants have gained substantial profits as a result of their infringement in an amount presently unknown and to be determined at trial.

108.    Dermansky is entitled to recover her actual damages and any additional damages from all the relevant Defendants' profits not calculated in the computation of her actual damages in an amount to be determined at trial, pursuant to 17 U.S.C. § 504.

109.    In addition, to the extent discovery reveals any additional uses of the Bon Secour Oil Spill Heron Photograph by any of the Defendants in an infringement aside from the Infringing Advertorials made after the effective date of Dermansky's copyright registration, Plaintiff may be entitled to elect statutory damages and to recover her costs and attorneys' fees pursuant to 17 U.S.C. § 505.

110.    In addition, Plaintiff is entitled to permanent injunctive relief enjoining and restraining Defendants from infringing her copyright pursuant to 17 U.S.C. § 502.

### THIRD CLAIM FOR RELIEF
**Removal and Falsification of Copyright Management Information**
**Digital Millennium Copyright Act, 17 U.S.C. §1202**

111.    Plaintiff incorporates by reference and realleges the allegations contained in paragraphs 1 through 110, inclusive, as though fully set forth herein.

112.    Dermansky requires any licensee of her photographs to convey accurate authorship and ownership information (*i.e.*, CMI), and requires her licensees to pass that obligation to any sublicensee who seeks to use Plaintiff's photographs with permission from such licensee.

113.    The publication of the Bon Secour Oil Spill Heron Photograph in the Infringing Redbook Advertorial included a written copyright notice attributing the authorship and ownership of the copyright in the Bon Secour Oil Spill Heron Photograph to Plaintiff, which appears on the bottom left-hand corner of the image in Hearst's otherwise infringing use.

114.    The foregoing constitutes CMI, in particular pursuant to 17 U.S.C. §§ 1202(c)(1), (c)(2), and (c)(3).

115.    By contrast to the various Infringing Advertorial uses by Hearst and MSN set forth in this Complaint, which all contain Plaintiff's CMI on or directly below Plaintiff's Bon Secour Oil Spill Heron Photograph, Yahoo!'s publication of the Bon Secour Oil Spill Heron Photograph in the Yahoo! Infringing Advertorial does not contain any attribution to Plaintiff as author and owner even though the purported source, the Hearst Infringing Redbook Advertorial, conveyed Plaintiff's CMI.

116.    Yahoo!'s publication of the Bon Secour Oil Spill Heron Photograph does not contain any attribution to Plaintiff as author and owner, and instead falsely credits either Yahoo! itself, Getty, or Redbook.

117.    While Plaintiff does not know at this time whether Hearst or Yahoo! removed the authorship and ownership credits from the Bon Secour Oil Spill Heron Photograph in the Yahoo! Infringing Advertorial, either one or both of Hearst and/or Yahoo! knowingly distributed the Bon Secour Oil Spill Heron Photograph (Hearst to Yahoo! and/or Yahoo! to the public) with knowledge that Plaintiff's CMI had been removed or altered.

118.    Hearst and/or Yahoo! knew or should have known that Yahoo!'s publication and/or distribution of the Bon Secour Oil Spill Heron Photograph was or is likely to induce, enable,

facilitate, or conceal an infringement of Dermansky's rights in the Bon Secour Oil Spill Heron Photograph in connection with the Infringing Yahoo! Advertorial.

119.     Hearst and/or Yahoo! knew or should have known that each of Yahoo!'s publications and/or distributions of the Bon Secour Oil Spill Heron Photograph was or is likely to conceal Yahoo!'s own infringing uses of the Bon Secour Oil Spill Heron Photograph in connection with the Infringing Yahoo! Advertorial.

120.     Yahoo! also knew that its credits to itself, Getty and Redbook were false because none of them owned or authored the Bon Secour Oil Spill Heron Photograph.

121.     Based on the foregoing, one of or both of the Hearst and/or Yahoo! Defendants have committed at least one violation of 17 U.S.C. § 1202.

122.     Plaintiff has suffered actual damages as a result of the acts complained of herein in an amount to be determined at trial.

123.     Hearst and/or Yahoo! have gained profits that are attributable to the acts complained of herein in an amount unknown at present and to be determined at trial.

124.     Plaintiff is entitled to recover from Hearst and/or Yahoo! her actual damages and any additional profits of the Defendants not taken into account in computing her actual damages pursuant to 17 U.S.C § 1203(c)(2).

125.     In the alternative, and at her election, Plaintiff is entitled to recover from Hearst and/or Yahoo!, for each violation of 17 U.S.C. § 1202, the full extent of which is unknown to Plaintiff at present and which will be proven at trial, statutory damages of up to $25,000.00 per violation pursuant to 17 U.S.C. § 1203(c)(3)(B).

126.     Plaintiff is further entitled to recover her attorney's fees and costs from Hearst and/or Yahoo! pursuant to 17 U.S.C. §§ 1203(b)(4) and (b)(5).

127.    Plaintiff is also entitled to permanent injunctive relief to prevent or restrain further violations of 17 U.S.C.§ 1202 pursuant to 17 U.S.C. § 1203(b)(1).

**FOURTH CLAIM FOR RELIEF**
**Contributory Removal and Falsification of Copyright Management Information**
**Digital Millennium Copyright Act, 17 U.S.C. §1202**

128.    Plaintiff incorporates by reference and realleges the allegations contained in paragraphs 1 through 127, inclusive, as though fully set forth herein.

129.    Dermansky requires any licensee of Plaintiff's photographs to convey accurate authorship and ownership information (*i.e.*, CMI), and requires her licensees to pass that obligation to any sublicensee who seeks to use Plaintiff's photographs with permission from such licensee.

130.    At all relevant times, Hearst had actual knowledge and possession of Plaintiff's CMI with respect to the Bon Secour Oil Spill Heron Photograph.

131.    As the owner and publisher of magazines and periodicals with some of the widest circulation and distribution numbers (across the United States and internationally), Hearst knew or should have known, generally, about the obligation of publishers to credit photographers for their works.

132.    Further, since Hearst purportedly obtained the Bon Secour Oil Spill Heron Photograph from Getty, and Getty provided Plaintiff's CMI to Hearst with a requirement that her CMI be published with any licensed uses, Hearst knew or should have known about the specific obligation to credit Dermansky as the author and owner of the Bon Secour Oil Spill Heron Photograph.

133.    When Hearst distributed a copy of the Bon Secour Oil Spill Heron Photograph to Yahoo! pursuant to a content license agreement between Hearst and Yahoo!, which resulted in the Infringing Yahoo! Advertorial, Hearst may have failed to convey or pass on to Yahoo! the

obligation to display or convey Plaintiff's CMI in the Bon Secour Oil Spill Heron Photograph, including in connection with the Infringing Yahoo! Advertorial.

134.   If that is what occurred, then Hearst aided, abetted, induced, and otherwise contributed to Yahoo!'s removal and alteration of Plaintiff's CMI in the Bon Secour Oil Spill Heron Photograph in connection with the Infringing Yahoo! Advertorial.

135.   Hearst knew Yahoo!'s re-publication of Infringing Redbook Advertorial did not contain any attribution to Plaintiff as author and owner of the Bon Secour Oil Spill Heron Photograph.

136.   Hearst knew Yahoo!'s re-publication of Infringing Redbook Advertorial contained false attribution of the Bon Secour Oil Spill Heron Photograph to *Redbook*, Yahoo! and Getty.

137.   Hearst knowingly allowed Yahoo! to continue to distribute and display the Bon Secour Oil Spill Heron Photograph with knowledge that Plaintiff's CMI had been removed or altered, and/or the CMI was falsified by Yahoo!.

138.   Hearst knew or should have known that its aiding and abetting of Yahoo!'s publication and/or distribution of the Bon Secour Oil Spill Heron Photograph was or is likely to induce, enable, facilitate, or conceal an infringement of Dermansky's rights in the Bon Secour Oil Spill Heron Photograph in connection with the Infringing Yahoo! Advertorial because Yahoo! had removed Dermansky's CMI and added its own false CMI.

139.   Hearst knew or should have known that each of Yahoo!'s publications and/or distributions of the Bon Secour Oil Spill Heron Photograph was or is likely to conceal Yahoo!'s own infringing uses of the Bon Secour Oil Spill Heron Photograph in connection with the Infringing Yahoo! Advertorial.

140.     Based on the foregoing, Hearst has committed at least one violation of 17 U.S.C. § 1202.

141.     Plaintiff has suffered actual damages as a result of the acts complained of herein in an amount to be determined at trial.

142.     Hearst and Yahoo! have gained profits that are attributable to the acts complained of herein in an amount unknown at present and to be determined at trial.

143.     Plaintiff is entitled to recover from Hearst and Yahoo! her actual damages and any additional profits of the Defendants not taken into account in computing her actual damages pursuant to 17 U.S.C § 1203(c)(2).

144.     In the alternative, and at her election, Plaintiff is entitled to recover from Hearst and Yahoo!, for each violation of 17 U.S.C. § 1202, the full extent of which is unknown to Plaintiff at present and which will be proven at trial, statutory damages of up to $25,000.00 per violation pursuant to 17 U.S.C. § 1203(c)(3)(B).

145.     Plaintiff is further entitled to recover her attorney's fees and costs from Hearst and Yahoo! pursuant to 17 U.S.C. §§ 1203(b)(4) and (b)(5).

146.     Plaintiff is also entitled to permanent injunctive relief to prevent or restrain further violations of 17 U.S.C.§ 1202(b) pursuant to 17 U.S.C. § 1203(b)(1).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendants as follows:

(a)    For an award of monetary damages in an amount to be proven at trial, but which is no less than $425,000.00;

(b)    For her attorneys' fees and costs to the full extent allowable.

(c)    For a permanent injunction preventing further violations of her rights.

(d)    For interest as allowed by law; and

(e)    For such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury for all issues so triable in this case.

Dated: February 20, 2024.        Respectfully submitted,

                        **LEICHTMAN LAW PLLC**

By:  / s / *David Leichtman*
       David Leichtman (DL 7233)
       Shane Wax (SW 3247)
       Devin L. Newman (DN 8163)
       Emma Hoffman (EH 9673)

       185 Madison Avenue, 15th Floor
       New York, New York 10016
       Tel: (212) 419-5210

       dleichtman@leichtmanlaw.com
       swax@leichtmanlaw.com
       dnewman@leichtmanlaw.com
       ehoffmann@leichtmanlaw.com

       *Attorneys for Plaintiff Julie Dermansky*